# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

In the Matter of David F. Stoddard, Respondent.

Appellate Case No. 2025-002184

---

Opinion No. 28323
Submitted February 20, 2026 – Filed March 18, 2026

---

## DEFINITE SUSPENSION

---

Disciplinary Counsel William M. Blitch, Jr., and
Assistant Disciplinary Counsel Connor J. Parker, both of
Columbia, for the Office of Disciplinary Counsel.

David F. Stoddard, of Anderson, pro se.

---

**PER CURIAM:**   In this attorney disciplinary matter, Respondent and the Office
of Disciplinary Counsel (ODC) have entered into an Agreement for Discipline by
Consent (Agreement) pursuant to Rule 21 of the Rules for Lawyer Disciplinary
Enforcement (RLDE) contained in Rule 413 of the South Carolina Appellate Court
Rules (SCACR).  In the Agreement, Respondent admits misconduct, agrees to pay
costs and consents to the imposition of any sanction up to a nine-month definite
suspension.  We accept the Agreement and suspend Respondent from the practice
of law in this state for nine months.  The facts, as set forth in the Agreement, are as
follows.

## I.

Respondent was admitted to practice in 1985.  He operates a solo practice in
Anderson handling personal injury, family, and criminal defense matters.  His
disciplinary history includes a public reprimand, and three letters of caution—one
in 2008 citing Rule 1.3, which requires diligence, and two more in 2014 and 2017
citing Rule 1.4, which requires adequate communication.  *In re Stoddard*, 391 S.C.
447, 706 S.E.2d 505 (2011) (publicly reprimanding Respondent for failing to

conduct monthly trust account reconciliations, failing to maintain adequate funds in his trust account to cover bank charges and fees, failing to prepare settlement statements on all of his contingency cases, and failing to properly supervise his nonlawyer staff); *see* Rule 2(s), RLDE, Rule 413, SCACR (providing a letter of caution may be considered in a subsequent disciplinary proceeding if the caution or warning contained therein is relevant to the misconduct alleged in the subsequent proceedings). This Agreement involves five complaints pending against Respondent.

*Matter A*

In January 2018, client E.G. and Respondent entered into an engagement agreement for representation in seeking joint custody and visitation of E.G.'s child. Respondent filed a summons and complaint seeking temporary relief on behalf of E.G. A temporary hearing was scheduled for March 7, 2018. The parties reached an agreement as to the issue of visitation prior to the temporary hearing, and the agreement was approved by the family court on a temporary basis.

Mediation was held in November 2018. Respondent did not attend the mediation. E.G. attended with his father and authorized the mediation to go forward without representation. Respondent represents he did not attend the mediation because E.G. told Respondent he would prefer to go to mediation without Respondent rather than paying Respondent to attend. Respondent further represents that clients attending mediation without their attorney present was common among his colleagues in the past. The mediation was held and an agreement was reached, but E.G. subsequently told Respondent that he and the opposing party had conflicting interpretations of a material term regarding the location of visitation exchange. E.G. asked Respondent to clarify the exchange location in the mediated agreement to make the exchange location fairer. Respondent represents he contacted opposing counsel to discuss changing the agreement, but opposing counsel refused to consider changing the mediated agreement. The mediated agreement also required the parties to exchange pay information within a specified timeframe before the final hearing.

A final uncontested hearing was scheduled for January 10, 2019. The day of the hearing, Respondent realized he had not prepared a financial declaration for E.G. Respondent represents he tried to reach E.G. to advise him of the necessary financial declaration and assist in preparation of a financial declaration but was not successful in reaching E.G. Respondent represents the judge allowed the hearing to proceed without E.G.'s financial declaration but required it to be furnished later.

The opposing party had prepared a financial declaration for the hearing; however, both opposing counsel and Respondent neglected to exchange this information prior to the final hearing as required in the mediated agreement. The opposing party's financial declaration contained income figures that differed from the income figures in the mediated agreement. Respondent did not know which monetary figures applied to the agreement—either from the opposing party's financial declaration or the figures set out in the mediated agreement. Respondent represents that he sought clarification during the hearing because the income figures bore on the child support calculation, which the court may have interpreted as an objection to the agreement. The court adjourned the hearing for lack of agreement.

On February 7, 2019, Respondent submitted a proposed order for continuance of the final hearing. The court administratively dismissed the case pursuant to the 365-day rule but provided the case could be restored for purposes of putting an agreement on the record. However, the opposing party was not willing to seek approval of the mediated agreement. In May 2019, Respondent filed another summons and complaint and obtained temporary relief for E.G. In December 2019, Respondent filed a motion to be relieved as counsel in the subsequent case, which was granted in February 2020.

Respondent admits his conduct in this matter violated the following provisions of the Rules of Professional Conduct, Rule 407, SCACR: Rule 1.3 (requiring diligence and promptness in representing a client); and Rule 3.2 (requiring reasonable efforts to expedite litigation consistent with the interests of the client).

*Matter B*

In September 2018, Respondent and client V.L. entered a contingent fee agreement for representation regarding a medical malpractice claim. Respondent believed the statute of limitations would expire on February 18, 2019. On February 18, 2019, Respondent had not retained an expert witness to provide an affidavit as required by the relevant statute. Respondent represents he had provided the records to a nurse in January or February 2019 for review, and the nurse provided Respondent with the names of potential experts, including a neurosurgeon and an orthopedist. Respondent was unable to contact either of the experts and get them to agree to render an opinion prior to February 18, 2019.

Despite lacking the required medical exert affidavit, Respondent filed a Notice of Intent to Sue (NOI) with the clerk of court. Respondent believed there was a

statutory basis for filing the NOI without the medical expert affidavit so long as the affidavit was filed within forty-five days, which was April 4, 2019. Respondent represents that he retained an expert witness on March 29, 2019, who gave his verbal opinion that there was no deviation from the standard of care. The expert witness did not prepare a written report or affidavit. Respondent did not pursue a second opinion. Respondent first told V.L. about the medical expert's verbal opinion on June 4, 2019.

V.L. terminated Respondent by letter on June 10, 2019. However, Respondent did not formally withdraw from the case. One week after he was terminated, Respondent offered, in an email communication with the client, to serve the NOI on the defendants. Additionally, approximately a week later, the clerk of court's office called Respondent to advise that V.L. was attempting to file a pro se motion which the clerk would not accept because Respondent was still listed as attorney of record. Respondent told the clerk's office he would take over despite knowing he was terminated June 10, 2019. On June 19, 2019, Respondent then served the NOI on one of the named defendants knowing it was defective because Respondent had not filed the required affidavit within 45 days of filing the NOI. Respondent did not believe good cause could be shown to extend the deadline to file the affidavit. Furthermore, June 19, 2019, was one day after the expiration of the 120-day timeframe specified in Rule 3, SCRCP, for service of the filed NOI.

Respondent admits his conduct in this matter violated the following provisions of the Rules of Professional Conduct, Rule 407, SCACR: Rule 1.1 (requiring competence, including thoroughness and preparation); Rule 1.3 (requiring diligence and promptness in representing a client); Rule 1.4 (requiring prompt communication that keeps the client reasonably informed about the status of the matter); Rule 1.16(a)(3) (requiring a lawyer to withdraw from representation if discharged by the client); and Rule 3.2 (requiring reasonable efforts to expedite litigation consistent with the interests of the client).

*Matter C*

Respondent and C.L. entered into an engagement agreement for representation of C.L. in a divorce case. The parties reached a settlement agreement in mediation, and a final order adopting the agreement was filed February 4, 2020. The final order required C.L. to satisfy a mortgage within a specific timeframe. In the event C.L. did not satisfy the mortgage within that timeframe, the order required C.L. to sell the mortgaged property to satisfy the mortgage.

C.L. did not satisfy the mortgage within the specified timeframe or sell the mortgaged property. The opposing party filed a new proceeding seeking temporary relief, and the court issued a temporary order on August 6, 2020, authorizing the opposing party to sell the property. The order further authorized the opposing party to recoup any expenses and costs incurred for the upkeep of the property from the proceeds of the sale.

The opposing party sold the property. Respondent obtained a disbursement sheet from opposing counsel itemizing several of the opposing party's costs and expenses that had been deducted from the sale proceeds. C.L. wanted Respondent to contest the amount of costs and expenses deducted from the sale. C.L. claimed he was entitled to a greater distribution because the opposing party had inflated costs and expenses. Respondent corresponded with opposing counsel attempting to resolve the issue; however, his attempts were unsuccessful. Despite C.L. raising the issue to Respondent and Respondent's attempts to resolve it with opposing counsel being unsuccessful, Respondent did not take any legal action on C.L.'s behalf to litigate the issue. Respondent did not pursue a mediation, which was required before having a final hearing on the merits. Without consulting C.L., Respondent allowed the case to be administratively dismissed. Approximately two to three months after the case was administratively dismissed, Respondent represents that he told C.L. that he "would need to file a complaint for contempt, but likely need[ed] some discovery, which is unusual in a contempt matter." Respondent further represents he later changed his mind and now believes "a new action to enforce the order, rather than contempt might be a better way to proceed." However, Respondent failed to timely communicate with C.L. about this strategy.

Respondent represents he attempted to contact C.L. after becoming aware that C.L. filed a disciplinary complaint; however, C.L. has not responded.

Respondent admits his conduct in this matter violated the following provisions of the Rules of Professional Conduct, Rule 407, SCACR: Rule 1.2(a) (requiring a lawyer to consult with a client and to abide by a client's decisions concerning the objectives of representation); Rule 1.3 (requiring diligence and promptness in representing a client); Rule 1.4(a)(2) (requiring a lawyer to reasonably consult with the client about the means by which the client's objectives are to be accomplished); Rule 1.4(a)(3) (requiring a lawyer to keep the client reasonably informed about the status of the matter); Rule 1.4(b) (requiring a lawyer to explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation); and Rule 3.2 (requiring reasonable efforts to expedite litigation consistent with the interests of the client).

*Matter D*

In May 2022, client F.W. consulted with Respondent over the telephone regarding a DUI charge, and Respondent quoted a retainer fee. Respondent's paralegal emailed F.W. a client questionnaire and a retainer agreement. The retainer agreement provided that Respondent would commence representation upon payment of $2,000. F.W. filled out the questionnaire, signed the retainer agreement, and paid $2,000. Respondent's paralegal handled the transaction unbeknownst to Respondent, and Respondent did not know he had been retained.

In July 2022, F.W.'s trial was held on the DUI charge, and neither F.W. nor Respondent appeared. A bench warrant was issued, and F.W. was arrested, which caused him to lose his job. Respondent represents that he relied on his paralegal to transmit notices of appearance, requests for jury trials, and discovery requests when he was retained. Respondent represents that when these documents are transmitted, the court usually continues the client's initial court appearance indefinitely. Respondent further represents his paralegal left the firm three weeks after F.W. retained him that the paralegal did not send a notice of appearance, request for jury trial, or discovery request to the court for F.W.'s case before she left. Respondent represents he was unaware of his paralegal's failure to transmit the documents until he learned F.W. had been arrested for failing to appear at trial. Respondent represents that as soon as he learned F.W. was in jail, he secured F.W.'s release, filed a motion for a new trial, which was granted, and served a discovery request.

Respondent admits his conduct in this matter violated the following provisions of the Rules of Professional Conduct, Rule 407, SCACR: Rule 1.1 (requiring competence, including thoroughness and preparation); Rule 1.3 (requiring diligence and promptness in representing a client); and Rule 5.3(a) (requiring a lawyer to supervise his nonlawyer staff to ensure conduct compatible with the lawyer's professional obligations).

*Matter E*

In June 2022, client A.M. retained Respondent for representation in a divorce case. A.M. had been served with a summons and complaint and had filed an answer and counterclaim pro se. Equitable division of property and debt were in dispute. A.M. signed an engagement agreement in June 2022 and finished paying

Respondent's retainer in August 2022; however, Respondent did not notify the court of his representation until January 2023.

Between July 2022 and December 2022, A.M. emailed Respondent four times and wrote to Respondent once to request information on the status of her case. Respondent did not respond to A.M.'s emails or letter until January 7, 2023, when Respondent forwarded A.M. emails showing he had scheduled a mediation for March 2023.

An imperative issue for A.M. was the valuation of real property in dispute for equitable distribution. A.M. sought Respondent's assistance in determining a valuation for the real property. Respondent represented to A.M. that a realtor could provide a valuation. In February and March 2023, A.M. emailed Respondent three times requesting information about how to prepare for mediation and how to proceed with obtaining a valuation from a realtor. After not receiving any response from Respondent, A.M. obtained a valuation from a realtor and sent it to Respondent. In the weeks leading up to mediation, A.M. emailed Respondent three more times to request Respondent's help to prepare for her mediation, but these requests went unanswered. Respondent emailed A.M. the web link to attend the mediation virtually a few days before the mediation. The mediation was held as scheduled and resulted in an impasse.

Respondent did not file a request for a final hearing. Respondent represents he "cannot recall whether it was an oversight on my part or if there was a reason for not filing the request." In May 2023, A.M.'s case was administratively dismissed. The week after the case was dismissed, Respondent emailed opposing counsel to request consent to file a motion to restore, but Respondent was unsuccessful in obtaining opposing counsel's consent. In June and July 2023, A.M. emailed Respondent three times requesting an update on the status of her case and pursuing a second mediation, but Respondent did not respond. In July 2023, Respondent told A.M. that her case had been dismissed. A.M. terminated Respondent, hired other counsel, and requested that Respondent refund her retainer. Respondent never responded to A.M.'s request.

Respondent admits his conduct in this matter violated the following provisions of the Rules of Professional Conduct, Rule 407, SCACR: Rule 1.2(a) (requiring a lawyer to consult with a client and to abide by a client's decisions concerning the objectives of representation); Rule 1.3 (requiring diligence and promptness in representing a client); Rule 1.4(a)(2) (requiring a lawyer to reasonably consult with the client about the means by which the client's objectives are to be accomplished);

Rule 1.4(a)(3) (requiring a lawyer to keep the client reasonably informed about the status of the matter); and Rule 1.4(b) (requiring a lawyer to explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation).

## II.

In the Agreement, Respondent admits his misconduct as set forth above constitutes grounds for discipline pursuant to Rule 7(a)(1), RLDE, Rule 413, SCACR (providing a violation of the Rules of Professional Conduct is a ground for discipline). As a sanction for his misconduct, Respondent agrees to a letter of caution, a confidential admonition, a public reprimand, or a definite suspension of up to nine months. He also agrees to pay costs, complete LEAPP Ethics School within one year, and reimburse the Lawyers' Fund for Client Protection for any future claims paid related to these matters.[1] In mitigation, Respondent submitted two character letters attesting that he is committed to his clients and seeks to be diligent and professional in handling cases.

## III.

Given Respondent's disciplinary history, which involves instances of similar misconduct, we find a nine-month suspension is appropriate in this matter. *See In re Toney*, 396 S.C. 303, 721 S.E.2d 437 (2012) (imposing a nine-month definite suspension for misconduct including failing to diligently handle client matters, failing to timely return client files, failing to appear for a hearing, failing to adequately communicate, and failing to timely refund unearned fees); *In re Newell*, 349 S.C. 40, 562 S.E.2d 308 (2002) (imposing a nine-month definite suspension including failing to competently and diligently handle client matters, failing to abide by client's decision concerning objectives of the representation, failing to properly communicate, and failing to properly refund unearned fees). Accordingly, we suspend Respondent from the practice of law in this state for a period of nine months.[2]

Within fifteen days, Respondent shall file an affidavit with the Clerk of Court showing that he has complied with Rule 30, RLDE, Rule 413, SCACR. Within

---

[1] The Agreement also notes that, in the event a suspension is imposed, appointment of the Receiver will be necessary to protect the interests of Respondent's clients.
[2] The request to appoint the Receiver is addressed in a separate order of today's date. Appellate Case No. 2026-000273.

thirty days, Respondent shall pay the costs incurred in the investigation and prosecution of this matter by ODC and the Commission on Lawyer Conduct. As a condition of discipline, Respondent shall complete the Legal Ethics and Practice Program Ethics School within one year. Respondent shall also reimburse the Lawyers' Fund for Client Protection for any future claims paid related to the above-referenced matters.

**DEFINITE SUSPENSION.**

**KITTREDGE, C.J., FEW, JAMES, HILL and VERDIN, JJ., concur.**